A06A1819. DUMAS v. THE STATE.
(641 SE2d 271)

ANDREWS, Presiding Judge.

Convicted by a jury of armed robbery, hijacking a motor vehicle, possession of a firearm during commission of a felony, and aggravated assault with a deadly weapon,[1] Quentin Dumas appeals the denial of his motion for new trial, alleging, among other errors, ineffective assistance of counsel and error in the court's charge to the jury. Finding no error, we affirm.

1. Dumas' motion for new trial was made on the grounds that the verdict was contrary to the evidence, strongly against the weight of the evidence, and contrary to law and the principles of justice and equity, i.e., the "general grounds." *Stinson v. State*, 185 Ga. App. 543 (364 SE2d 910) (1988); *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988).[2] Therefore, we first consider the legal sufficiency of the evidence. *McIvory v. State*, 268 Ga. App. 164 (1) (601 SE2d 481) (2004).

On appeal, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys the

---

[20] See *Moss v. Weiss*, 275 Ga. App. 690, 693 (3) (621 SE2d 807) (2005).
[1] The aggravated assault conviction was merged into the armed robbery for purposes of sentencing.
[2] The errors of law are discussed in the following divisions.

presumption of innocence; moreover, on appeal this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995).

So viewed, the evidence was that, around 2:00 a.m. on November 28, 2001, Azeez Numan, a resident of Joseph Lowery Street in Atlanta, went to the BP Station near his home to get some items. As he was coming out of the station, Numan was approached by a man, later identified as Dumas, wearing a green hoody (a sweatshirt with a hood) who asked him a question which he did not understand. Numan responded that he did not know anyone or have anything. Dumas then glanced around and pulled a silver revolver from his waistband, at which point Numan began running. A second man with a black revolver stepped in front of him, blocking his escape. Dumas came toward Numan, who threw up his hands and begged them not to shoot because he had a baby on the way. Dumas wanted Numan's car keys and Numan threw them on the ground toward him. Dumas picked up the keys and went to the driver's side of Numan's car. The second man then asked Numan if he had any money. When Numan said he did not, this man went into Numan's pockets and pulled out his ATM and MARTA cards, which he then threw on the ground. Dumas started the car and the second man got in after telling Numan to run. Numan ran, but the car made a u-turn, cutting him off. The second man then chased him until Numan flagged down a passing motorist.

After being taken home by this motorist, Numan called police and Officer Davis responded. After talking to Numan, Davis returned to the BP Station where he spoke with Gurbsej Singh Saluja, the clerk that evening. Saluja had walked outside to look at the gas pumps while Numan was inside the store. Saluja saw two young men, one standing near Numan's car and a shorter man walking nearby. Saluja recognized the taller of the two as a man known as "Shoo-Shoo" who was a frequent customer. Saluja saw Shoo-Shoo and the shorter man approach Numan, take his keys and the contents of his pockets, and then leave in Numan's car with Shoo-Shoo driving.

Approximately two weeks after the incident, Numan was notified that his car had been located on December 3 at the Oakland City MARTA station. When he went to pick up the car, his mortgage money and a pair of roller skates were missing from the car. The car was not processed by police for any possible evidence.

Numan went by the BP Station and saw Shoo-Shoo there several times. Numan said although the man changed his hairdo, he always had on the same nice boots popular with the urban crowd. Although Numan called 911 when he saw Dumas, it was not until December 22, 2001, that police responded and Numan pointed Dumas out to Officer

Davis, the same officer who had responded in November. Dumas was taken into custody and placed in the back seat of the patrol car. Saluja was then asked to come outside and look at Dumas, whom he identified as Shoo-Shoo.

The evidence was legally sufficient and the trial court did not abuse its discretion in denying the motion for new trial even though Dumas produced a witness who testified that he was at the BP Station, and Dumas was not one of the two robbers. Credibility was solely for the trial court. See *Barner v. State*, 271 Ga. App. 233, 235 (609 SE2d 385) (2005); *Clark v. State*, 249 Ga. App. 97 (547 SE2d 734) (2001).

2. Dumas contends his separate convictions for armed robbery and hijacking a motor vehicle violate the state and federal prohibitions against double jeopardy, and the trial court erred in not vacating the armed robbery conviction. We disagree. OCGA § 16-5-44.1 (d) expressly provides that the offense of hijacking a motor vehicle shall be considered a separate offense and shall not merge with any other offense. Therefore, it supersedes the statutory double jeopardy provisions of OCGA § 16-1-7 in motor vehicle hijacking cases. Moreover, as we held:

> In *Mathis v. State*, [273 Ga. 508, 509 (543 SE2d 712) (2001),] the Supreme Court of Georgia held that OCGA § 16-5-44.1 (d) does not violate the prohibition against double jeopardy since the double jeopardy clause of the Georgia Constitution does not prohibit additional punishment for a separate offense which the legislature has deemed to warrant separate sanction.

(Footnotes omitted.) *Holman v. State*, 272 Ga. App. 890, 891 (1) (614 SE2d 124) (2005). See also *Mullins v. State*, 280 Ga. App. 689, 691 (2) (634 SE2d 850) (2006).

Further, with regard to his claim that his convictions violate the federal prohibition against double jeopardy, Dumas has failed to show "how the [hijacking] statute at issue violates the double jeopardy provision of the federal constitution when, as the *Mathis* court specifically determined, it does not violate the double jeopardy provision of the state constitution." *Holman v. State*, 272 Ga. App. at 891 (1). As in *Holman*, Dumas has not persuaded us that the federal constitution offers greater protection than the state constitution in a case where, as the Supreme Court of Georgia has already expressly concluded, hijacking a motor vehicle constitutes a *separate* offense warranting a *separate* sanction under Georgia law. Id.; *Mathis v. State*, 273 Ga. at 509 (1). We find no error.

3. Dumas' third enumeration is that the trial court erred in allowing the State to ask leading questions of witness Saluja. We disagree.

Saluja, aged sixty-two, was a native of India and had been in the United States for six years at the time of the trial. Although he spoke English, as acknowledged by trial counsel for Dumas, "there's a language barrier with Mr. Saluja." When the court reporter was asked if she was getting Saluja's testimony, she replied she was working on it and was "slightly confident" she was understanding him.

> Although leading questions are generally allowed only on cross-examination, the trial court has discretion to allow leading questions on direct examination where the witness is nervous, ignorant or hostile. OCGA § 24-9-63; *Fugate v. State*, 263 Ga. 260, 265 (431 SE2d 104) (1993). "It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal." Id.

*Smith v. State*, 243 Ga. App. 331, 332 (1) (533 SE2d 431) (2000).

The same rationale applies to allowing leading questions where there is a language barrier. There was no error.

4. Dumas complains that the trial court erred by charging the jury on all possible methods of committing aggravated assault when he was charged only with aggravated assault with a deadly weapon.

Although the trial court did initially give all methods for committing aggravated assault, the trial court also read the indictment to the jury, which directed the jury to aggravated assault with a deadly weapon, and instructed the jury that the State had the burden of proving every material allegation of the indictment and every essential element of the crimes charged beyond a reasonable doubt. Under the circumstances, "[t]he charge, when considered in its entirety, fairly instructed the jurors that they could convict the defendant only of the offense with which he was charged in the indictment." *Lumpkin v. State*, 249 Ga. 834, 836-837 (2) (295 SE2d 86) (1982). See also *Leonard v. State*, 281 Ga. App. 184, 186 (3) (635 SE2d 795) (2006); *Short v. State*, 276 Ga. App. 340, 349 (9) (623 SE2d 195) (2005). Accordingly, we find no reversible error.

5. Finally, Dumas contends that his trial counsel rendered ineffective assistance of counsel for failing to file a motion to suppress the identification of Dumas by Saluja due to a suggestive showup.

> To prevail on a claim of ineffective assistance of counsel, an appellant must show deficient performance on the part of

counsel and prejudice to his defense resulting from that deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). A successful ineffective assistance claim must satisfy both prongs of the *Strickland* test. *Wilkes v. State*, 269 Ga. App. 532, 536 (4) (604 SE2d 601) (2004). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." (Citation omitted.) *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

*Adams v. State*, 276 Ga. App. 319, 323 (6) (623 SE2d 525) (2005).

Trial counsel testified at the motion for new trial hearing that she chose not to file a motion to suppress Saluja's identification of Dumas because he had previously known Dumas as a customer known as Shoo-Shoo prior to the showup.

Because the failure to file a motion to suppress does not constitute per se ineffective assistance of counsel, an appellant must make a "strong showing" that the evidence would have been suppressed had a motion been filed. *Millsap v. State*, 275 Ga. App. 732, 736 (3) (c) (621 SE2d 837) (2005).

Here, as correctly deduced by trial counsel, Saluja's prior knowledge of Dumas was an independent basis for his identification, even assuming that the showup was impermissibly suggestive, making a motion to suppress futile. *Scott v. State*, 248 Ga. App. 542, 544 (1) (b) (545 SE2d 709) (2001).

*Judgment affirmed. Barnes, C. J., and Bernes, J., concur.*

DECIDED JANUARY 16, 2007.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.