## A07A1731. WILLIAMS v. THE STATE.
(661 SE2d 563)

SMITH, Presiding Judge.

Darry Williams appeals from his aggravated assault with intent to rape conviction. Williams contends that the appointment of the trial judge violated the Georgia Constitution and that the trial court erred: (1) in its charge to the jury; (2) by admitting the victim's allegedly mistaken identification; (3) by failing to recuse after allegedly demonstrating bias; and (4) by denying his claim of ineffective assistance of counsel. For the reasons set forth below, we affirm.

A recitation of the evidence presented below will aid our analysis of these issues. The victim testified that Williams attempted to rape her in the West End MARTA station parking lot when she was on her way to work around 5:30 a.m. When she opened her driver's side door, Williams "jumped out of nowhere." He put a knife to her throat and ordered her to stop screaming. He then told her that she "was going to give him p***y or he was going to take it." When she replied that she was menstruating, he stated that she would have to give him oral sex.

Williams then took away her car keys, reached over her to unlock the passenger door, pushed her legs back inside the car, and closed the

---

[11] *Odem v. Pace Academy*, 235 Ga. App. 648, 656 (2) (510 SE2d 326) (1998).

driver's door. When Williams walked around to the passenger side of her car, the victim jumped out of her car and started screaming and running toward the street. When the victim flagged down a sheriff's officer at a nearby intersection, she pointed Williams out to the officer because Williams "was just walking off like he hadn't [done] anything." When the officer ordered Williams to "come here," Williams ran away and threw a knife into some bushes. Williams escaped after a brief "tussle." The officer retrieved the knife, and the victim identified it as the one used by Williams.

After Williams's escape, the victim identified Williams as her attacker because she knew him by name and recognized him from working with him for approximately two years at a Popeyes restaurant. At the time of the attack, they no longer worked together. The officer identified Williams at trial as the man he saw in the MARTA parking lot at the time of the victim's attack.

The State also presented evidence of two similar transactions. In September 1985, Williams approached a woman at 6:30 a.m. while she was on her way to a bus stop to go to work. Williams threatened her and forced her to walk to some nearby woods where he raped her and performed oral sodomy on her. Like the victim in this case, the victim knew Williams before he raped her and the rape happened near a MARTA station.

The other victim testified that, in October 1985, Williams attacked her while she was reporting for work at 5:00 a.m. at a fast food restaurant. He approached her with a knife while she was unlocking the restaurant's door. The knife was similar to the one used against the victim in this case. Williams forced her to another location where he raped her and forced her to perform oral sex on him. The victim grabbed the knife at some point and fought with Williams, resulting in wounds that required her to be hospitalized for six weeks. Williams ran away when another employee arrived by car and the car's lights illuminated him and the victim. This victim identified Williams as the man who raped her in a photographic lineup at the hospital.

1. Williams contends that the appointment of the senior judge who presided over his trial violated the Georgia Constitution because his successive two-month temporary appointments equated with creating "a de facto permanent superior court judge by administrative order." We cannot consider this argument, however, because Williams failed to raise his constitutional challenge to the senior judge's appointment at the earliest opportunity. See *Wilson v. State*, 279 Ga. App. 459, 461 (1) (631 SE2d 391) (2006). Although Williams objected to the process by which the senior judge was appointed before trial, he did not allege that this process violated the Georgia Constitution until he filed an amended motion for new trial. As a

result, this issue is waived and cannot be considered on appeal. Id. (constitutional challenges raised for the first time in a motion for new trial are waived).

2. Williams asserts that he is entitled to a new trial because the order appointing the senior judge under OCGA § 15-1-9.1 (b) (2) was defective.[1] Williams raised this issue for the first time in his amended motion for new trial. "[F]ailure to raise this issue prior to the commencement of trial precludes appellate review of this issue." (Citation and footnote omitted.) *Oliver v. State*, 273 Ga. App. 754, 756 (2) (615 SE2d 846) (2005); see also *Moreland v. State*, 279 Ga. 641 (2) (619 SE2d 626) (2005). "Parties cannot wait until after they see the result of the [trial] to challenge a presiding judge's authority under OCGA § 15-1-9.1." (Citation omitted.) *Albright v. Peterson*, 247 Ga. App. 203 (1) (539 SE2d 919) (2000).

3. Williams argues the trial court erred in its charge to the jury on intent because it omitted a phrase in a charge previously approved by the Georgia Supreme Court. See *Alexis v. State*, 273 Ga. 423 (541 SE2d 636) (2001). In *Alexis*, the Supreme Court approved the following charge:

> You may infer, if you wish to do so, that the acts of persons of sound mind and discretion are the product of his will and you may infer, if you wish to do so, that a person of sound mind and discretion intends the natural and probable consequences of his acts. Whether you make any such inference or inferences in this case is a matter solely within the discretion of the jury.

Id. at 427 (5).

In this case, the trial court left out the second "you may infer, if you wish to do so," that preceded "a person of sound mind and discretion intends the natural and probable consequences of his acts." Williams asserts that this omission created an improper mandatory presumption that shifted the burden of proof to the defendant. See generally *Mohamed v. State*, 276 Ga. 706, 708 (1) (583 SE2d 9) (2003). We find no merit in this assertion because the second "you may infer, if you wish to do so," is redundant and duplicates the identical phrase at the beginning of the charge. The trial court's omission of this second phrase therefore did not change the meaning of the charge approved in *Alexis*, supra. We also note that the final sentence of the

---

[1] By "defective," we refer to the alternative argument in Williams's brief that the order appointing the senior judge "was insufficient" because the general conditions for application of this Code section had not been met. This objection was not made before trial and is not the same objection "to the process" referenced in Division 1 of this opinion.

trial court's charge makes it clear that the jury had sole discretion to draw any inferences outlined in the charge. See *Alexis*, supra.

4. Williams asserts that the trial court erred by charging the jury, "your verdict must be unanimous. If you cannot unanimously agree upon a verdict the judge is required by law to declare a mistrial and retry the case before another jury." While "a pre-deliberation charge on unanimity is proper," trial courts should not instruct a jury "as to the consequences of failing to reach unanimity." (Citation omitted.) *Roberson v. State*, 219 Ga. App. 160, 163 (4) (464 SE2d 262) (1995). No reversible error results, however, in cases in which the evidence against the defendant is overwhelming and there is no evidence that the instruction coerced or placed undue pressure upon a juror to abandon an honest belief of the defendant's innocence. *Harris v. State*, 263 Ga. 526, 528 (6) (435 SE2d 669) (1993); *Roberson*, supra.

In this case, Williams does not point to any evidence of coercion or undue pressure, and our review has revealed none. As the evidence against Williams was overwhelming, we find no reversible error resulted from the trial court's charge.

5. Williams claims that the jury's verdict is "invalid," because the victim's description of his height and weight was inaccurate. Williams cites no supporting authority for this claim. To the extent that he is arguing that the evidence is insufficient to support his conviction, we find no merit in it. In addition to providing police with Williams's height and weight, the victim identified him by name as a former co-worker. This evidence amply supports his conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

6. Williams contends he is entitled to a new trial because the trial court exhibited bias during the sentencing hearing by stating, "if it were legal to sentence you to a longer period of time, I probably would." As in *Wyciskala v. State*, 147 Ga. App. 518 (249 SE2d 329) (1978), "[s]uch a statement by the trial court would certainly be an expression of the trial court's disapproval of [the defendant's] conduct." Id. at 519 (1). It does not, however, indicate personal bias or prejudice against Williams on the part of the trial judge. Id. (no bias in trial court's statement that it would sentence defendant to maximum if defendant found guilty of burglary again). "In order to be disqualifying the alleged bias must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (Citations and punctuation omitted.) *Baptiste v. State*, 229 Ga. App. 691, 696 (1) (494 SE2d 530) (1997). Because the trial court's statement does not demonstrate bias, we find no merit in Williams's claim.

7. Williams asserts he received ineffective assistance of counsel because his counsel: (a) should have moved to exclude the victim's

identification of Williams at trial because she had been shown a suggestive photographic lineup; (b) failed to object to a similar transaction witness's testimony that she had been a virgin before her rape by Williams; (c) admitted believing the victim during his closing argument; and (d) failed to cross-examine the victim about her inaccurate description of Williams's height and weight.

"A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." (Citations and punctuation omitted.) *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

> The two-prong test for determining the validity of a claim of ineffective[ness] . . . of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation, punctuation and footnote omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001).

> Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.

*Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

(a) We find no merit in Williams's contention that he is entitled to a new trial because his counsel failed to move to exclude the victim's identification of him at trial based on a suggestive photo lineup.[2] In order to prevail on this claim, Williams must make a "strong showing that the evidence would have been suppressed had [a] motion been filed." (Citations and footnote omitted.) *Millsap v. State*, 275 Ga. App. 732, 736 (3) (c) (621 SE2d 837) (2005). In this case, such a motion would have been futile based upon the victim's prior

---

[2] A police officer told the victim that "we think the guy is in this line-up, pick him out for us."

knowledge of Williams that provided an independent basis for her identification. *Dumas v. State*, 283 Ga. App. 279, 283 (5) (641 SE2d 271) (2007).

(b) Williams contends his counsel was ineffective for failing to object after a similar transaction witness blurted out during the State's direct that she was a virgin at the time she was raped by Williams.[3] See *Herndon v. State*, 232 Ga. App. 129, 132 (2) (499 SE2d 918) (1998). We find no merit in this contention, because Williams cannot meet his burden of proving that there is a reasonable probability that but for this statement, the jury would have acquitted him. Id. The statement was made by a similar transaction witness, not the victim in this case, and this evidence was not mentioned again during the trial. In light of the overwhelming evidence against Williams, no prejudice resulted from trial counsel's failure to object.

(c) Williams asserts his trial counsel was ineffective in closing argument because he said, ". . . we have no reason not to believe [the victim]. We really don't." This statement, however, cannot be viewed in isolation. Trial counsel testified that his strategy in closing argument was to acknowledge that the victim had been attacked, but assert that she could be mistaken about the identity of her attacker because the police officer who chased her attacker did not pick Williams out of a photo lineup.

> Whether an attorney's trial tactics are reasonable "is a question of law," not fact. The test for reasonable attorney performance has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

(Citation, punctuation and footnote omitted.) *Hazelrigs v. State*, 255 Ga. App. 784, 785 (567 SE2d 79) (2002). After reviewing defense counsel's entire closing argument, we find that a reasonable lawyer could have employed the trial strategy articulated by trial counsel in the motion for new trial hearing. Id. at 785 (1). We therefore find that trial counsel's performance in closing argument was not deficient. Id.

---

[3] The State asked, "Did you want that to happen?" and the witness responded, "No, I was a virgin."

(d) Williams argues that his trial counsel was ineffective for failing to cross-examine the State's witnesses about discrepancies between their physical description of the victim's attacker in police reports and Williams's actual physical description. We find no reasonable probability, however, that Williams would have been acquitted if trial counsel had conducted such a cross-examination because the victim testified that she knew Williams and worked with him for two years.

Having found no merit in Williams's enumerations of error, we affirm his conviction.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED MARCH 12, 2008 —
RECONSIDERATION DENIED APRIL 9, 2008.

*Charles H. Frier*, for appellant.
*Paul L. Howard Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.