### A10A1932. HARRIS v. THE STATE.
(707 SE2d 878)

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Wakenya Harris appeals his armed robbery conviction. Harris contends that the evidence was insufficient, and that he was denied effective assistance of counsel during the preparation of his case and during the trial. Upon our review, we affirm.

1. Harris contends that the evidence was insufficient to authorize a guilty verdict of armed robbery. He asserts that his conviction was based solely on the uncorroborated testimony of an alleged accomplice. We do not agree.

We view the evidence in the light most favorable to support the jury's finding of guilt, and the defendant no longer enjoys a presumption of innocence; moreover, this Court gives due regard to the jury's opportunity to judge witness credibility, and we do not weigh the evidence or determine witness credibility. *Sheppard v. State*, 300 Ga. App. 631 (686 SE2d 295) (2009). "It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence." (Citation omitted.) *Thompson v. State*, 281 Ga. App. 627, 629 (1) (636 SE2d 779) (2006). As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict. *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

So viewed, the evidence establishes that at approximately 1:35 a.m. on October 7, 2007, the victim, an assistant manager with McDonald's, closed the restaurant and went to a local bank to make

the night deposit. She was accompanied in her car by another employee and her son. Another employee, his girlfriend, and a third employee followed them in a separate car. When the victim exited her car she was carrying one deposit bag in her purse. When she reached into her car to retrieve a second deposit bag, a man in a red mask approached her from behind, slammed her head on the top of the car and placed a gun to her face. He said, "Bitch, give me the money. I'll kill you." A second male stood nearby "nudging [the first man] into [her]." The victim could not recall if the second man had also worn a mask, but believed he had. She testified that she could not see the men's faces but was certain they were African-American because she could see part of their arms and because of their "demeanor."

After the men got the money, they ran away, and two of the men with the victim chased them. The victim drove to a nearby convenience store and called the police. An investigator with the Covington Police Department met the victim and the witnesses at the scene of the crime and questioned them about the incident. During this same period, another officer who was responding to the robbery dispatch received tips from citizens in the area that they had observed three males running toward an address at a nearby street. One of the witnesses said that one of the three men he saw running lived at the address.

The officer went to the house and observed that three men were there. He did not question the three, but waited for the investigator to arrive. The investigator questioned the three suspects who were identified as Harris, Torique Sanders (Harris's brother), and Quinton Collins. The three were transported to the station for questioning, and Harris's mother gave police permission to search the house. Police recovered money from under a chest of drawers, underneath a speaker, from inside a shoe, and inside a bathroom.

Collins admitted to police that he was involved in the robbery and implicated Harris and Sanders as his accomplices. At trial, he testified that Harris had helped plan the robbery, positioned himself across the street from the bank, and whistled to let the other two know when the victim arrived. Collins testified that he and Sanders wore red masks and that after robbing the victim, the three ran away and placed their clothing in a trash can at "Cookie'[s]" house. Police recovered items, including a BB gun, blue jeans, red bandanas, a red sock cap, and a dark shirt from the trash can. Witnesses had described the robbers as wearing dark shorts and pants, and "red type hoodies." Collins testified that Harris got $800 from the robbery, and he and Sanders got $500 each. The victim testified that she knew Collins because he had worked at the restaurant with her for approximately two years, and that Harris had interviewed for a job there about six months before the robbery, but was not hired.

Sanders pled guilty to the robbery. Although he had implicated Harris in the robbery in an earlier statement to police, at trial he testified that police had threatened him into implicating his brother, and that Harris was not involved. He testified that the robbery was Collins's idea and that he had helped Collins commit the robbery.

Harris testified at trial and admitted that Collins and Sanders talked with him about their plans, but denied being involved. He also denied being a look-out on the night of the crime, and testified that he discouraged the two from committing the robbery because he had recently served "a little time."

It is generally true that while

> a defendant may not be convicted solely upon the uncorroborated testimony of an accomplice, even slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. The corroborating evidence can be circumstantial so long as it tends to connect the accused to the crime, and a determination of its sufficiency is a matter for jury resolution.

(Citations and punctuation omitted.) *Richardson v. State*, 305 Ga. App. 850, 852 (700 SE2d 738) (2010).

Here, in addition to the testimony from Collins, police recovered a substantial amount of hidden cash from the house where Harris lived with his mother and brother; similar clothing to that worn by the suspects and a toy gun were recovered in a trash can near the house; and Harris implicated himself in a recorded telephone conversation with his girlfriend when he told her to "keep the money." Harris's girlfriend also testified that, contrary to the alibi he provided police, Harris was not with her until later on the night of the crime. Harris's mother testified that he told her that Collins was "snitching" on them, and that she was surprised that her sons had large amounts of money in their rooms because they were unemployed.

This independent evidence was sufficient to corroborate the testimony given by Collins, and the cumulative evidence was sufficient for a rational trier of fact to find Harris guilty of the crime charged. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

2. Harris also contends he received ineffective assistance of trial counsel before trial and during his trial. Harris contends that trial counsel did not adequately prepare him to testify on his own behalf, and was ineffective in not requesting that the jury be charged on accomplice corroboration. We do not agree.

To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), "a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." (Citation omitted.) *Coleman v. State*, 286 Ga. 291, 297 (6) (687 SE2d 427) (2009). "A court need not determine whether trial counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiency." (Citation, punctuation and footnote omitted.) *Frazier v. State*, 278 Ga. App. 685, 690 (3) (629 SE2d 568) (2006), overruled in part on other grounds by *Schofield v. Holsey*, 281 Ga. 809 (642 SE2d 56) (2007). We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous. *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (573 SE2d 465) (2002).

Regarding Harris's assertion that he was not adequately advised or prepared before testifying, "whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel." *Burton v. State*, 263 Ga. 725, 728 (6) (438 SE2d 83) (1994). Trial counsel testified at the motion for new trial hearing that he advised Harris about the risk associated with testifying and that Harris said that he wanted to testify to tell the jury the truth about where he got the cash police found in his home. It was the function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony between Harris and his trial counsel. *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995). As the trial court's denial of an ineffectiveness claim based on conflicting evidence is not clearly erroneous, we find no merit in this claim. See *Noble v. State*, 220 Ga. App. 155, 157 (1) (469 SE2d 307) (1996).

Although Harris also contends that trial counsel was ineffective for failing to request a charge on accomplice corroboration,

> [g]iven that the State did not rely solely upon accomplice testimony in securing [Harris's] conviction but rather adduced ample evidence wholly sufficient to warrant the verdict (independent of the accomplice's testimony), the failure of his trial counsel to request a charge on accomplice testimony did not constitute deficient performance.

*Hayes v. State*, 281 Ga. App. 749, 751 (1) (637 SE2d 128) (2006).
*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED MARCH 16, 2011.

*Teresa L. Smith*, for appellant.

*W. Kendall Wynne, Jr.*, District Attorney, *Layla H. Zon*, Assistant District Attorney, for appellee.