**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 23, 2013**

# In the Court of Appeals of Georgia

A13A1357. MERKEITH LANE v. THE STATE.
A13A1358. DOMINIQUE LANE v. THE STATE.

MCMILLIAN, Judge.

This appeal arises from armed robberies and burglaries at two locations in Louisville, Georgia on the same night. Appellants Merkeith Lane and Dominique Lane were two of the five persons charged with the crimes; four of the five were tried together and convicted. Appellants claim a number of errors at trial, including that: (1) a custodial statement by Merkeith was not freely and voluntarily given and therefore inadmissible; (2) the trial court erred in closing the trial to the public for the testimony of one witness; (3) the trial court erred in allowing the introduction of non-testifying co-defendants' statements that implicated Appellants; (4) Dominique's trial counsel was ineffective for failing to object to the in-court identification by one of the

victims; (5) the trial court failed to instruct the jury that the testimony of an accomplice required sufficient corroboration to establish Dominique's participation in the crimes charged; and (6) there was insufficient evidence to convict Dominique of armed robbery, attempted armed robbery, and burglary. Finding no error, we affirm.

Reviewing the evidence in the light most favorable to the jury's verdict, as we must on appeal,[1] in the early morning hours of July 2, 2007, two women and one man were awakened at a residence in Louisville, Georgia by five men who demanded money. The women were so frightened that they hid under the bedcovers in their respective bedrooms, but the other victim, Eric Fleming, was taken from the bedroom and he was struck in the head with a gun. Shots were also fired. The perpetrators then left with a cell phone and approximately $170.

During this exchange, Fleming was able to identify two of the perpetrators, Merkeith and Dominique Lane, who were his cousins and whom Fleming has known all of their lives. Fleming also recognized one of the other perpetrators, B. M., as the

---

[1] "On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation and punctuation omitted.) *Goss v. State*, 305 Ga. App. 497, 497 (699 SE2d 819) (2010).

one who shot the gun. However, upon being interviewed by law enforcement, Fleming did not initially disclose that he recognized Appellants, explaining that "You won't believe that two people in your life that you knew all your life would try – would do something like that." Fleming later received anonymous threatening calls at his workplace about testifying in court.

Also on the morning of July 2, 2007, Jacountress Martin and his friend Travis Washington arrived at Martin's home in Louisville, Georgia. Martin went inside where he encountered five intruders and was shot in the hand and thigh. Washington did not identify any of the perpetrators, and Martin did not testify at trial.

A few days after the robbery, Investigator Clark Hiebert interviewed Merkeith Lane.[2] In that interview, although Merkeith was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), he did not request an attorney, nor did he ask that the interview be terminated. Initially, Merkeith denied any part in the armed robberies, but he eventually confessed.

After the trial court denied the motion to exclude the statements, Investigator Hiebert was permitted to testify about Merkeith's confession while substituting the

---

[2] The interview was recorded, and the portion heard by the trial judge at the *Jackson-Denno* hearing was transcribed. *Jackson v. Denno*, 378 U.S. 363 (84 SCt 1774, 12 LE2d 908) (1964).

3

words "other" or "others" in place of the names of the other defendants with the exception of B. M. who testified. Likewise, Investigator Hiebert was permitted to testify about statements made by co-defendants Kyle Gilmore, Christopher Young, and Dominique Lane that each was with B. M. and "others" on the night of July 2, 2007, although none of these defendants admitted that they were involved in the armed robberies.

At trial, B. M. testified against the others. B. M. was 16 years old at the time of the robberies and had entered a plea deal that would allow him to be treated as a juvenile on the charges. Prior to B. M.'s testimony, the State requested that B. M. be treated as a juvenile and that the courtroom be closed for his testimony. The trial judge asked defense counsel if they had any objections to the closing of the courtroom, and none objected. B. M. testified that he, along with Appellants, Kyle Gilmore, and Christopher Young went to rob the first residence where they encountered Eric Fleming. He also admitted carrying the gun that went off. After robbing the first residence, the five perpetrators went to the second residence also to rob it, and B. M. and at least one of the other co-defendants shot at Jacountress Martin. Christopher Young, Dominique Lane, and B. M. had guns; Merkeith Lane did not.

4

After trial, Appellants were each convicted of two counts of armed robbery, criminal attempt to commit armed robbery, and two counts of burglary. Merkeith's counsel did not file a motion for new trial, but on July 14, 2011, the trial court authorized the filing of an out-of-time motion for new trial, which after a hearing, was denied. Merkeith timely filed his notice of appeal in Case No. A13A1357.

Dominique initially filed a motion for new trial on December 12, 2008, which was denied, and then a notice of appeal on August 31, 2009. After the appeal was docketed, Dominique raised an ineffective assistance of counsel claim against his trial and appellate counsel, leading to the appointment of new counsel, who filed a motion to remand to pursue the ineffectiveness claim. This Court granted the motion for remand, and the trial court heard and denied Dominique's second amended motion for new trial. The appeal in A13A1358 followed.

*Case No. A13A1357*

1. Merkeith Lane contends that the trial court erred in not suppressing his statements under OCGA § 24-3-50 because they were induced by hope of benefit. Former OCGA §§ 24-3-50 and 24-3-51[3] provided:

---

[3] OCGA §§ 24-3-50 and 24-3-51 have appeared together since their initial enactment in 1863, and are to be read in tandem. See *Brown v. State*, 290 Ga. 865 (725 SE2d 320) (2012). Although these sections were repealed as of January 1, 2013,

> To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it.

The "slightest hope of benefit" refers to "promises related to reduced criminal punishment – a shorter sentence, lesser charges, or no charges at all." *Brown*, 290 Ga. at 868-869 (2). See also *Preston v. State*, 282 Ga. 210, 212 (2) (647 SE2d 260) (2007) ("Generally, the reward of a lighter sentence for confessing is the 'hope of benefit' to which OCGA § 24-3-50 refers.")(citation and punctuation omitted.); *Brown v. State*, 278 Ga. 724, 728 (3) (609 SE2d 312) (2004) ("'slightest hope of benefit' can mean hope of a lighter sentence"). "The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect." (Citation omitted.) *White v. State*, 266 Ga. 134, 135 (2) (465 SE2d 277) (1996).

"In determining the admissibility of a custodial statement during a *Jackson v. Denno* hearing, the trial court must consider the totality of the circumstances and

---

in connection with the enactment of Georgia's new Evidence Code, they have been reenacted in substantially the same form in OCGA § 24-8-824.

apply a preponderance of the evidence standard." (Citation and punctuation omitted.) *Samuels v. State*, 288 Ga. 48, 49 (2) (701 SE2d 172) (2010). "On appeal, when we review the denial of a motion to suppress a statement, we owe no deference to the way in which the trial court resolved questions of law, but we generally accept its findings about questions of fact and credibility unless clearly erroneous." (Citation and footnote omitted.) *Edenfield v. State*, 293 Ga. 370, 374 (744 SE2d 738) (2013). See also *Preston*, 282 Ga. at 212 ("A trial court's findings regarding the admissibility of an incriminating statement will be upheld on appeal unless clearly erroneous."); *Pittman v. State*, 277 Ga. 475, 477 (2) (592 SE2d 72) (2004) (same). But "when the material facts are not in dispute–when they can be ascertained definitely, for instance, from a video recording of a statement–we give less deference to the fact findings of the trial court." *Edenfield*, 293 Ga. at 374, n. 6.

Turning first to the partial transcript of the recording of Merkeith's interview, Merkeith complains that Investigator Hiebert offered an impermissible hope of benefit when he explained:

> Come sentencing time, the district attorney says, Your Honor, we talked to this young man and he had an opportunity to work something out without all the expenses of a jury trial in this county, and now we've had two jury trials. We would like to see him receive the maximum on each

7

count but to run consecutive rather than concurrent. And that means when one sentence is complete, then the next one starts. And I feel like on this case I wouldn't be a bit surprised if the district attorney is going to want to go consecutive unless somebody decides to – the ones that decide to help theirself, they're going to get a break.

Investigator Hiebert also referenced a conversation that he had with the district attorney's office in which "[t]hey said, if Merkeith wants to get straight, if he wants to tell the truth, listen to him. If he don't, we'll deal with it." After these exhortations, Merkeith again denied knowledge about the armed robberies. But after some further discussion about how the district attorney may favor the persons who "get straight" before trial, Merkeith began confessing to the armed robberies. The entire interview took 60 to 90 minutes.

Based on our review of the record, we find that the trial court correctly determined that the statements made by Investigator Hiebert do not contain an explicit or implicit offer for a reduced sentence such that they would constitute an impermissible hope of benefit. To the contrary, the investigator's explanation of consecutive versus concurrent sentences and the options available to the district attorney's office merely emphasized the seriousness of the charges. See *Preston*, 282 Ga. at 212 (2) (officer's discussion of the possible sentences and statement that the

district attorney brought charges based on a recommendation from the police "amounted to no more than an explanation of the seriousness of [the defendant's] situation" and "[a]dmonitions to tell the truth . . .")(citation and punctuation omitted.) Compare *Foster v. State*, 283 Ga. 484 (660 SE2d 521) (2008) (written promise by detective not to press any additional weapons charges against defendant was impermissible hope of benefit). And we note that the investigator made it clear that the district attorney's office would listen if Merkeith wanted to "tell the truth" and that the district attorney would "deal with it" if Merkeith continued to deny the charges. This amounts to no more than a permissible admonition to tell the truth. See *Pittman*, 277 Ga. 478 (2) (urging defendant to tell the truth so he could "work this" was no more than an admonition to tell the truth).

Moreover, we find Merkeith's reliance on *Canty v. State*, 286 Ga. 608 (690 SE2d 609) (2010), to be misplaced. In *Canty*, our Supreme Court held that telling a defendant that confessing to the crime could result in a "shorter term . . . is exactly the hope of benefit which is prohibited under Georgia law." Id. at 610. But Investigator Hiebert did not tell Merkeith that he would receive a reduced sentence if he confessed. And "[m]erely telling a defendant that his or her cooperation will be made known to the prosecution does not constitute the 'hope of benefit' sufficient to

9

render a statement inadmissible under OCGA § 24-3-50." (Citation and punctuation omitted.) *Samuels*, 288 Ga. at 50 (2).

Accordingly, after examining the totality of the circumstances, we conclude that the trial court did not err in denying Merkeith's motion to exclude his statement pursuant to former OCGA § 24-3-50. See *Sosniak v. State*, 287 Ga. 279 (695 SE2d 604) (2010) (under totality of the circumstances, detectives never promised or gave hope to defendant that he would receive a lighter punishment in exchange for a confession).

2. Merkeith also urges us to consider as plain error the closing of the courtroom for the testimony of B. M. while conceding that trial counsel was given the opportunity to object and explicitly waived any objection. "The improper closing of a courtroom is a structural error requiring reversal only if the defendant properly objected at trial and raised the issue on direct appeal." *Reid v. State*, 286 Ga. 484, 488 (690 SE2d 177) (2010). In the absence of an objection at trial, "the issue of closure may only be raised in the context of an ineffective assistance of counsel claim." (Citation and punctuation omitted.) *State v. Abernathy*, 289 Ga. 603, 611 (5) (715 SE2d 48) (2011). Because Merkeith has not asserted an ineffective assistance of

counsel claim on this ground, this issue has not been preserved and his enumeration of error fails.

3. Merkeith also asserts that the trial court erred in allowing Investigator Hiebert to testify about statements made by his nontestifying co-defendants in violation of *Bruton v. United States*, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968). Specifically, Merkeith complains that Investigator Hiebert testified that co-defendants Kyle Gilmore and Christopher Young separately stated that each, along with B. M., and others went to the park on the night of July 2, 2007. With respect to Dominique Lane, Investigator Hiebert testified that "Dominique stated that he, B. M., and others were together and walked through the projects on the Hill, and B. M. and others parted ways while he and another went home." Investigator Hiebert was then asked in summary: "So each of these four defendants sitting at defense table acknowledged that they were with B. M. and others July 2, 2007 in the early morning hours, or the night of July 1, 2007?" to which he replied in the affirmative.

In *Bruton,* the United States Supreme Court held that in a jury trial with multiple defendants, "the admission of a statement of a non-testifying co-defendant which inculpates the defendant unconstitutionally deprives that defendant of the Sixth Amendment right to cross-examine witnesses, even where the jury is instructed to

11

limit its consideration of the statement to the co-defendant who made it." *Bruton*, 391 U. S. at 135-136. But "*Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial." (Citations omitted.) *Moss v. State*, 275 Ga. 96, 98 (561 SE2d 382) (2002). See also *Dulcio v. State,* 292 Ga. 645, 649 (740 SE2d 574) (2013); *Thomas v. State*, 268 Ga. 135, 137-138 (485 SE2d 783) (1997).

The statements by Dominique, Christopher Young, and Kyle Gilmore merely asserted that "others" were with B. M. sometime during the night and early morning hours of the armed robberies but did not inculpate Merkeith or anyone else in the actual crimes or place them at the crime scenes. Although other evidence linked Merkeith as part of the group with B. M. at the armed robberies, including Merkeith's own confession and the victim's identification, the *Bruton* rule only applies when the statements on their face incriminate the non-testifying defendant. Accordingly, these statements do not violate *Bruton*. See *Moss*, 275 Ga. at 99 (2) (no *Bruton* violation from statement that defendant went to apartment on night of murder and stayed in bathroom for a while since it did not clearly incriminate defendant); *Dulcio*, 292 Ga. at 649 (unclear statements that could just as credibly be interpreted as saying

12

defendant was responsible for an argument that preceded the murder did not violate *Bruton*).

*Case Number A13A1358*

4. Dominique Lane asserts that he received ineffective assistance of counsel because (a) his trial attorney did not move to suppress the in-court identification by one of the victims of the armed robberies nor did he move for a mistrial on the grounds that the witness's identification had not been disclosed in discovery and (b) trial counsel did not request a jury charge that the testimony of an accomplice requires sufficient corroboration to establish Dominique's participation in the crimes charged.

Under the well-established standards set out in *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), "[t]o show a denial of effective assistance, a defendant must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance." *State v. Worsley*, 293 Ga. 315, 323 (3) (745 SE2d 617) (2013). "To prove that the performance of his lawyer was deficient, a defendant must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." Id. The failure to

13

make a futile motion does not constitute ineffective assistance. *Lupoe v. State*, 284 Ga. 576, 579-580 (669 SE2d 133) (2008).

(a) Dominique asserts that his counsel was ineffective for failing to move to suppress the identification by victim Eric Fleming prior to trial, object to the in-court identification of Dominique, or move for a mistrial because the state allegedly failed to provide notice that Fleming could identify Dominique. At trial, Fleming testified that he recognized Dominique as one of his assailants, that he was related to Dominique, and that he had known Dominique his entire life. Fleming was also able to provide details about Dominique such as his nickname and where they had grown up together. At the motion for new trial hearing, trial counsel testified that he did not move to suppress the in-court identification because he found nothing objectionable to the testimony. However, counsel conceded that it would have been appropriate to file a motion to suppress the identification before trial.

Pretermitting the issue of whether the in-court identification procedures were unduly suggestive,[4] we find that because Fleming knew Dominique before the armed robbery, there was an independent basis for the in-court identification, making futile

---

[4] There was no photo lineup used to identify Dominique.

14

any objection to the testimony.[5] See *Lupoe*, 284 Ga. at 579-580 (no basis for excluding eyewitness identification when witness had known defendant for several years, spoke with defendant about the crime just before he committed it, and saw defendant commit the crime); *Williams v. State*, 290 Ga. App. 829, 833-834 (7) (a) (661 SE2d 563) (2008) (although photo lineup was suggestive, victim had worked with defendant for two years and had independent basis for identification). And for the same reasons, any motion to suppress prior to trial would have also been futile. See *Dumas v. State*, 283 Ga. App. 279, 282 (5) (641 SE2d 271) (2007) (even if showup was impermissibly suggestive, witness had known defendant as customer and therefore there was an independent basis for the identification).

Moreover, there was no discovery violation upon which trial counsel could have sought a mistrial. OCGA § 17-16-7 requires the prosecution to produce any witness statement in their possession, custody or control when the witness is intended to be called at trial, but these obligations are not triggered when a witness makes an

---

[5] Furthermore, Fleming's delayed identification of Dominique provides no basis for challenging his conviction because trial counsel had the opportunity to cross-examine Fleming about why he failed to make the identification sooner and the possibility that Fleming misidentified Dominique. And Fleming explained that he did not identify his cousins because he was shocked that his relatives whom he has known their entire lives would rob him at gunpoint.

15

oral statement as in this case. See *Forehand v.* State, 267 Ga. 254, 255-256 (3) (477 SE2d 560) (1996); *Winfrey v. State*, 286 Ga. App. 718, 721 (3) (650 SE2d 262) (2007). See OCGA § 17-6-1 (2) (defining "statement of a witness"). And both trial counsel and the trial judge recalled the prosecutor disclosing at the *Jackson-Denno* hearing that an eyewitness could identify Dominique.[6] Accordingly, trial counsel was not deficient in failing to seek a mistrial for the purported discovery violation.

(b) Dominique also asserts that his trial counsel was ineffective by failing to request a jury charge that the testimony of an accomplice requires sufficient corroboration to establish defendant's participation in the crime. Former OCGA § 24-4-8 provides: "The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness . . . ."[7] "Slight evidence of defendant's identity and

---

[6] Although the testimony at the *Jackson-Denno* hearing was transcribed, argument by counsel was not.

[7] Former OCGA § 24-4-8, which was effective at the time of trial, has been repealed as part of Georgia's New Evidence Code. It has been re-enacted at OCGA § 24-14-8.

16

participation from an extraneous source is all that is needed to corroborate the accomplice's testimony." (Citation and punctuation omitted.) *Wooten v. State*, 240 Ga. App. 725, 728 (3) (c) (524 SE2d 776) (1999); *Harris v. State*, 308 Ga. App. 456, 458 (707 SE2d 878) (2011). Moreover, our Supreme Court has held that an accomplice corroboration charge is only required "where the sole witness in the case is an accomplice." *Johnson v. State*, 258 Ga. 506, 508 (5) (371 SE2d 396)(1988).

In this case, the accomplice, B. M., was not the only witness. Eric Fleming identified Dominique, and Dominique admitted in a statement to law enforcement that he was with B. M. on the night of the armed robberies. And these statements provide more than the "slight evidence" needed to corroborate the accomplice's testimony. For these reasons, counsel was not ineffective for failing to request a charge on accomplice corroboration. *Harris*, 308 Ga. App. at 459 (no ineffective assistance of counsel for failing to request charge on accomplice corroboration when state did not rely solely on accomplice testimony in securing conviction); *Wooten*, 240 Ga. App. at 728 (no ineffective assistance of counsel for failing to request accomplice corroboration charge when state did not rely wholly on accomplice's testimony).

We also do not find plain error in the failure to instruct the jury that corroboration is required for the same reasons. See *Brown v. State*, 321 Ga. App. 198,

200 (739 SE2d 118) (2013) (no plain error in failing to give accomplice corroboration charge when state relies on other evidence apart from accomplice's testimony). See *State v. Kelly*, 290 Ga. 29, 32 (718 SE2d 232) (2011) ("We now hold that, under OCGA § 17-8-58 (b), appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions.").

5. Dominique also asserts that the trial court erred in allowing Investigator Hiebert to testify about Merkeith's custodial statements in violation of *Bruton. Bruton*, 391 U.S. at 123. Specifically, Investigator Hiebert was allowed to testify that Merkeith confessed that he, B. M., and "others" went to commit the armed robberies, but the trial court instructed the jury that they were to only consider such statements against the maker and not any co-defendant. Dominique contends that the substitution of the names of the defendants with "other" or "others" violates *Bruton* and its progeny.

Since *Bruton* was issued, the United States Supreme Court and our Supreme Court have considered the extent that custodial statements by nontestifying co-defendants must be redacted to exclude the name of the defendant in order to pass constitutional muster. See *Richardson v. Marsh,* 481 U.S. 200 (107 SCt 1702, 95 LE2d 176) (1987); *Gray v. Maryland,* 523 U.S. 185 (118 SCt 1151, 140 LE2d 294)

18

(1998); *Hanifa v. State*, 269 Ga. 797 (505 SE2d 731) (1998). In *Hanifa*, our Supreme Court explained that:

> Following the lead of the U.S. Supreme Court, we hold that, unless the statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a nontestifying co-defendant's statement which inculpates the defendant by referring to the defendant's name *or existence*, regardless of the existence of limiting instructions and of whether the incriminated defendant has made an interlocking incriminating statement. A co-defendant's statement meets the Confrontation Clause's standard for admissibility when it does not refer to the existence of the defendant and is accompanied by instructions limiting its use to the case against the confessing co-defendant. The fact that the jury might infer from the contents of the co-defendant's statement in conjunction with other evidence, that the defendant was involved does not make the admission of the co-defendant's statement a violation of the Confrontation Clause.

Id. at 803-804 (emphasis supplied). See *Burns v. State*, 280 Ga. 24 (622 SE2d 352) (2005) (upholding co-defendant's statement that did not refer to defendant). "[S]tatements which, despite redaction, refer directly to a person whom the jury may infer to be the defendant run afoul of the confrontation clause . . . ." *Davis v. State*, 272 Ga. 327, 331 (6) (528 SE2d 800) (2000). Thus, both the defendant's name and existence must be eliminated from the nontestifying co-defendant's statement.

19

Here, Investigator Hiebert was allowed to testify to the existence of the "others" involved in the armed robberies, and given the evidence that five men committed the armed robberies, with four of them on trial and B. M. as a witness, the jury reasonably could have concluded that the "others" referred to Dominique and his co-defendants. Because Dominique did not have an opportunity to cross-examine Merkeith, his Sixth Amendment rights were violated. See *Davis*, 272 Ga. at 331 (statement which did not implicate nontestifying co-defendant and stated that "someone" shot the victim violated *Bruton*); *Hanifa*, 269 Ga. at 804 (identification of defendant by nickname and as "someone," "others" and "they" violated *Bruton*). *Cf. Butler v. State*, 270 Ga. 441, 445-446 (511 SE2d 180) (1999) (allowing redacted statement when there are multiple defendants on trial, letters were used in place of the defendants' names, and it was unclear which defendant corresponded with each letter).

However, a *Bruton* violation does not require reversal "if the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the statement was harmless error." (Citation and punctuation omitted.) *Anderson v. State*, 311 Ga. App. 732, 736 (716 SE2d 813) (2011); *Richard*

*v. State*, 287 Ga. App. 399, 403 (4) (651 SE2d 514) (2007). See also *Davis*, 272 Ga. at 332 (outlining cases in which the *Bruton* violation has been held not so harmful as to require reversal). Here, Dominique has not shown harm resulting from this testimony given the other overwhelming evidence of his guilt. Accomplice B. M. testified that Dominique was involved in the armed robberies, victim Eric Fleming positively identified Dominique as participating in the first armed robbery, and Dominique admitted being with B. M. sometime during the night or early morning hours when these incidents took place. Accordingly, the trial court did not err in denying Dominique's motion for new trial on this ground.

6. Dominique further contends that the admission of Merkeith's custodial statements violated his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (124 SCt 1354, 158 LE2d 177) (2004), because Merkeith did not testify at trial. At the outset, we note that *Crawford* and *Bruton* expound related but distinct doctrines. Although both are grounded in the Sixth Amendment's Confrontation Clause, *Crawford* holds that a defendant must have an opportunity to confront and cross-examine any person whose testimonial statement is put into evidence, id. at 54, while *Bruton* limits the use of inculpatory statements by nontestifying co-defendants at trial. *Bruton*, 391 U.S. at 135-136. Although

21

Dominique preserved his objection under *Bruton*, he waived any objection under *Crawford* by failing to object on this ground at trial. See *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314, n. 3 (129 SCt 2527, 174 LE2d 314) (2009); *Haywood v. State*, 301 Ga. App. 717, 722 (689 SE2d 82) (2009); *Sheppard v. State*, 294 Ga. App. 270, 271 (2) (669 SE2d 152) (2008).

7. Finally, Dominique contends that the evidence was insufficient to convict him of two counts of armed robbery with respect to two victims at the first residence,[8] attempt to commit armed robbery with respect to one of the victims at the first residence,[9] and two counts of burglary with respect to the two residences.[10] Although we recognize that this Court reversed the convictions of co-defendants Kyle Gilmore and Christopher Young because the state failed to adduce evidence required to

---

[8] OCGA 16-8-41(a) provides in pertinent part: "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."

[9] OCGA § 16-4-1 states: "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."

[10] At the time of the offense, OCGA § 16-7-1 provided: "A person commits the offense of burglary when, without authority and with the intent to commit a felony therein, he enters or remains within the dwelling house of another or any building . . . ."

22

corroborate B. M.'s testimony identifying Gilmore and Young as participants in the crimes, see *Gilmore v. State*, 315 Ga. App. 85, 88 (726 SE2d 584) (2012), we have determined that B. M.'s testimony was sufficiently corroborated as against Dominique and his participation in the crimes.

Accordingly, upon review of the record, we find that the evidence was sufficient to enable a rational trier of fact to find Dominique guilty beyond a reasonable doubt of the crimes charged and upon which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Judgments affirmed. Andrews, P. J., and Dillard, J., concur.*